**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 25-1068

SHARON RADFAR,

Plaintiff, Appellant,

v.

JOSEPH I. COVINO, Sergeant of Police for the City of Revere,
individually and in the official capacity; BRIAN M. ARRIGO,
Mayor for the City of Revere, individually and in the official
capacity; JAMES GUIDO, Chief of Police for the City of Revere,
individually and in the official capacity; REVERE, MA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Aframe, Lipez, and Howard,
Circuit Judges.

Elizabeth M. Clague for appellant.

Kenneth H. Anderson, with whom Anderson, Goldman, Tobin,
Pasciucco, L.L.P., was on brief, for appellee Joseph I. Covino.

Daniel E. Doherty for appellees Brian M. Arrigo, James Guido,
and Revere, MA.

January 6, 2026

**AFRAME, Circuit Judge**.  We have stated periodically that "where a trial court correctly takes the measure of a case and authors a convincing decision, it rarely will serve any useful purpose for a reviewing court to wax longiloquent."  Eaton v. Penn-America Ins. Co., 626 F.3d 113, 114 (1st Cir. 2010) (citing cases).  This is an exemplar case for following that maxim.

Sharon Radfar brought civil rights and tort claims against her former romantic interest, Revere, Massachusetts Police Officer Joseph Covino.  She also sued the City of Revere, Revere Mayor Brian Arrigo, former Revere Police Chief James Guido, and other unnamed officers of the Revere Police Department (collectively, the "Revere Defendants").  In two thoughtful opinions, the district court dismissed the claims against the Revere Defendants for failure to state a claim and granted Covino summary judgment.  See Radfar v. City of Revere, No. 1:20-cv-10178, 2021 WL 4121493 (D. Mass. Sept. 9, 2021) (order granting the Revere Defendants' motion to dismiss); Radfar v. City of Revere, No. 1:20-cv-10178, 2024 WL 5009072 (D. Mass. Dec. 5, 2024) (order granting Covino's motion for summary judgment).  We affirm largely for the reasons provided by the district court, adding comments responsive to Radfar's preserved appellate arguments.

For context, we provide an overview of the relevant facts, which were comprehensively addressed in the second district court order.  See Radfar, 2024 WL 5009072, at *2-8.  We present

- 3 -

these facts in the light most favorable to Radfar.  See Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 26 (1st Cir. 2004) (applying the summary judgment standard to recite facts in a case involving the review of grants of both a motion to dismiss and a motion for summary judgment).

In June 2015, Radfar, a George Mason University ("GMU") police officer, met Covino, a sergeant with the Revere Police Department, at a police event in Virginia.  At that time, Covino and Radfar began a romantic relationship.  After Covino returned to Massachusetts, he stayed in contact with Radfar.

Radfar visited Covino in the Boston area in August 2015, but during the visit, Covino said that he wanted to end the relationship.  The two reconciled, and Radfar visited again two months later.  Covino again told Radfar that he wanted to discontinue the relationship.  Nevertheless, their communications continued.  Radfar testified that in one phone call, Covino called her a "fat fuck Iranian" and stated that he hoped she would be "shot in [her] face with [her] service weapon."

In July 2016, Radfar returned by car to the Boston area. On that trip, she went uninvited to the Revere Police Department, Covino's place of employment, although he was not there at the time.

In January 2017, Radfar called Covino hundreds of times from over one hundred different phone numbers and sent him pictures

- 4 -

of her that had been spliced with pictures of him. During that month, Covino called the GMU Public Safety Office and spoke to Lieutenant David Ganley. Covino informed Ganley about Radfar's conduct and said that he wanted a "clean break" from her. Ganley told Covino that Radfar's behavior was consistent with her past relationships. Covino stated that his "only concern [in contacting GMU] was having [Radfar] stay away from [him]."

Lieutenant Ganley reported Covino's phone call to interim GMU Police Chief Carl Rowan, Jr. Rowan, in turn, requested a meeting with the Virginia State Police ("VSP") to ask for an investigation into Radfar's actions. Rowan later testified that Covino had not sought a criminal investigation of Radfar.

On January 25, 2017, Lieutenant Ganley emailed Covino with an update, in which he wrote: "My Chief wanted me to ask if you would be willing to file a police report with your local department? I know that's a big ask[,] but he wants to have something to back up our investigation." Shortly thereafter, VSP Special Agent William Kinnard called Covino to advise that he was investigating Radfar and requested "any and all records, documents, messages or transmissions" between Covino and Radfar. Covino provided a flash drive containing the requested information.

On January 29, 2017, Covino fulfilled Lieutenant Ganley's request for a police report by authoring an internal "To

- 5 -

File" Revere police "Incident Report" that described his relationship with Radfar. Covino did not provide the report to any Massachusetts law enforcement agencies. The report listed Covino as the "Reporting Officer," "Approving Officer," and "Victim," and named Radfar as the "Suspect" for an offense of criminal harassment.

On January 31, 2017, following a hearing, Covino obtained an ex parte abuse-prevention order against Radfar in Lynn District Court. In his supporting affidavit, Covino declared that Radfar had "repeatedly attempted to contact [him] by any means necessary, [including] telephone, text, written letters, social media, driving from [Virginia] to [Massachusetts] and showing up in [his] neighborhood or at [his] place of work." He also wrote that "Radfar has use[d] threats to force [him] into sexual relations with her on multiple occasions, being successful on one attempt while in Boston." Covino concluded his affidavit by stating that Radfar had become "increasingly threatening and unstable as of the last week," and he was in "absolute fear" of her.

Covino appeared at the ex parte hearing in plain clothes and while off-duty. He referenced Radfar's appearance at his police station, stated that they had met at a police event, and told the judge that "[w]e miss you over in Chelsea." When asked why he was seeking a restraining order, Covino said that Radfar

had threatened him, appeared in his neighborhood, and possessed a firearm. He also noted that Lieutenant Ganley and Agent Kinnard "advocated for a restraining order."

The same day that Covino obtained the abuse-prevention order, GMU police officers and Loudoun County Sheriff's deputies served the order on Radfar, seized her firearms, placed her on leave from her job, and notified her of the ongoing investigation. On February 15, 2017, both Covino and Radfar attended a hearing in Lynn District Court, during which Covino did not contest the dismissal of the restraining order. In an affidavit, Covino affirmed that he "agreed to vacate the [order] so that the [Radfar's] employment was not negatively impacted by her inability to possess a firearm."

Agent Kinnard continued to investigate Radfar, obtaining search warrants for Covino's cell phone records. Kinnard eventually asked a Virginia prosecutor to file charges against Radfar, but she declined. No charges were ever filed against Radfar in any jurisdiction.

Based on these events, Radfar filed a multi-count complaint against Covino and the Revere Defendants, alleging -- as relevant to this appeal -- (1) violations of her constitutional right to equal protection of the laws, (2) selective prosecution, (3) deliberate indifference to the need for training, and (4)

malicious prosecution.[1]  As already mentioned, we affirm the dismissal of the complaint against the Revere Defendants and the grant of summary judgment for Covino primarily for the reasons stated by the district court.  We offer the following additional comments.

**First:**  The district court correctly dismissed the claims under 42 U.S.C. § 1983 against the Revere Defendants alleging equal protection and selective prosecution violations.

"[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue."  City of Canton v. Harris, 489 U.S. 378, 385 (1989) (emphasis in original).  And a public official is liable only for the official's "direct acts or omissions, or from his or her indirect conduct that amounts to condonation or tacit authorization" of unconstitutional conduct.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 16 (1st Cir. 2011) (quoting Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 768 (1st Cir. 2010)).

---

[1]  Radfar's appellate brief mentions additional claims for violations of the Massachusetts Civil Rights Act, abuse of process, and intentional infliction of emotional distress.  Her arguments related to these claims are undeveloped and therefore waived.  See Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765 F.3d 103, 111 (1st Cir. 2014) (finding perfunctory briefing insufficient to preserve issue for appellate consideration).

- 8 -

Radfar complains that the district court incorrectly dismissed her equal protection claim against the Revere Defendants, which was premised on national origin discrimination, because the court did not credit the portions of the complaint alleging direct discrimination and focused instead on the lack of allegations showing disparate treatment toward similarly situated individuals.[2] An equal protection claim "requires a plaintiff to establish that the person, compared with others similarly situated, was selectively treated" in circumstances that suggest an impermissible motive, Wadsworth v. Nguyen, 129 F.4th 38, 54 (1st Cir. 2025), or to show "direct proof" of discriminatory animus, Fincher v. Town of Brookline, 26 F.4th 479, 486 (1st Cir. 2022). No matter the route taken, "the allegations of the complaint" must "make the claim as a whole at least plausible." Ocasio-Hernández, 640 F.3d at 15.

Radfar's complaint fails this plausibility test. It presents no factual predicate for the conclusory statement that she was discriminated against by the Revere Defendants because of her Iranian origin. See Toledo v. Sánchez, 454 F.3d 24, 34 (1st Cir. 2006) ("[M]ere conclusory allegations of discrimination unsupported by any facts are insufficient for notice pleading

---

[2] Radfar makes a fleeting reference to a "class-of-one" equal protection claim but does not develop an argument supporting such a claim.

purposes."); <u>Coyne</u> v. <u>City of Somerville</u>, 972 F.2d 440, 444 (1st Cir. 1992) ("A plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." (internal quotation marks and citation omitted)).[3]  And, as the district court noted, Radfar also does not plead that she was treated differently compared to others who were similarly situated.

Radfar's selective prosecution claim fails for the same reason.  Selective prosecution claims are evaluated under "ordinary equal protection standards."  <u>Willhauck</u> v. <u>Halpin</u>, 953 F.2d 689, 711 (1st Cir. 1991).  The pleading failures noted for the equal protection claim therefore also doom Radfar's selective prosecution claim.

**Second:**  Radfar's claim that the Revere Defendants exhibited "deliberate indifference to [Covino's] need for training, supervision, and discipline" was also inadequately pleaded.  Radfar contends otherwise on the ground that she pleaded

---

[3]  In her brief, Radfar refers to the existence of evidence of discriminatory statements from her own testimony and text messages purportedly sent by Covino.  Radfar has not produced the text messages, explained their absence from the record, or otherwise identified where this evidence is located, in violation of Federal Rule of Appellate Procedure 28(a)(8)(A).  In any event, this evidence does not bear on the adequacy of the equal protection claim that she pleaded, which is the issue before us.  <u>See</u> <u>Wadsworth</u>, 129 F.4th at 64 n.15 (declining to consider facts contained in the summary judgment record and not the operative complaint when evaluating a claim arising from a motion to dismiss).

that the City of Revere did not adequately train Covino even though Revere officials "knew of his lengthy history of misconduct."

For a city to be liable under § 1983 for inadequately training an officer, the failure must "amount[] to deliberate indifference to the rights of persons with whom [the officer] come[s] into contact." City of Canton, 489 U.S. at 388 (1989). The liability criteria for such claims are "exceptionally stringent." Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998). The plaintiff must allege that "municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies." Haley v. City of Boston, 657 F.3d 39, 52 (1st Cir. 2011). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city." City of Canton, 489 U.S. at 390. Such claims typically require proof that the city knew of a pattern of similar unconstitutional conduct by untrained employees. See Cosenza v. City of Worcester, 120 F.4th 30, 38 (1st Cir. 2024) (affirming summary judgment where there was no evidence of such a pattern and plaintiff did "not meaningfully pursue such a theory").

Radfar's complaint does not adequately plead deliberate indifference. She does not buttress her allegation that Revere officials knew that Covino had a "lengthy history of misconduct," with well-pleaded allegations that Covino received no training.

- 11 -

Nor does she identify what type of omitted training would have prevented her alleged injury.[4]  She also does not allege facts suggesting previous unconstitutional conduct that would have placed Revere on notice that it needed to provide additional or different training.  In short, Radfar's complaint contains nothing more than a bare allegation of deliberate indifference to the need for additional training, which is insufficient to establish liability under § 1983.

**Third:**  Radfar objects to the district court granting Covino summary judgment on the equal protection claim against him. She contends that the district court was too focused on her "flawed behavior" during and after the breakup and therefore lost sight of Covino's misconduct.

An equal protection claim under § 1983 requires the defendant to have acted under color of law.  See Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).  Radfar posits that Covino acted under color of law by (1) obtaining the abuse-prevention order in Lynn District Court and (2) using his police position to

---

[4]  Radfar relies on evidence of Covino's disciplinary history that she learned of during discovery.  That reliance is misplaced because, as noted already, we do not consider facts developed on the summary judgment record when those facts were not before the district court when it ruled on the motion to dismiss. See supra at n.3.

write the police report and gather and send information to law enforcement in Virginia.

We agree with the district court that only Covino's writing of the police report and associated conduct could possibly meet the color-of-law requirement. The inquiry "turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995). A critical aspect of the inquiry is whether the officer "purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." Id. Private conduct outside the line of duty, unadorned by the trappings of authority, is not conduct that occurs under color of state law. Id. at 986-87.

In seeking the abuse-prevention order, Covino's affidavit made no reference to his employment as a police officer. And, during the hearing, Covino appeared while off duty and out of uniform to discuss a personal relationship gone awry. See Parrilla-Burgos v. Hernández-Rivera, 108 F.3d 445, 449 (1st Cir. 1997) (granting summary judgment in a case where the officer was out of uniform and on medical leave but carried police identification and a service revolver and announced himself as a police officer). That Covino made a few comments such that the judge likely knew he worked as a police officer is not enough to

meet the color-of-law requirement where Covino was appearing to obtain relief in a purely private matter.  See Wilson v. Price, 624 F.3d 389, 392 (7th Cir. 2010) (stating that the "mere assertion that one is a state officer does not necessarily mean that one acts under color of state law.").

Whether Covino acted under color of law by authoring the police report about Radfar's behavior presents a closer question. "Merely complaining to the police does not convert a private party into a state actor."  Collins v. Womancare, 878 F.2d 1145, 1155 (9th Cir. 1989).  But Covino did more than that.  He listed himself as the reporting and approving officer on the report and used police facilities and personnel to store and transfer evidence. Covino could only assume these roles "because [he was] enabled by [his] status as [a] police officer[]."  Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 128 (1st Cir. 1999).

Assuming Covino acted under color of law in these respects, Radfar still failed to establish a triable issue on whether this conduct violated her right to equal protection.  As the basis for her equal protection theory, Radfar contends that Covino filed the police report and sent evidence to Virginia authorities because of her Iranian heritage.  In support of the claim, Radfar states that Covino once denigrated her national origin in a phone call.

To sustain an equal protection claim, a plaintiff must "show that the relevant policymakers and actors were motivated, at least in part, by a discriminatory purpose." Soto, 103 F.3d at 1067. A discriminatory purpose "implies that the decisionmaker . . . selected . . . a course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979).

Covino's alleged statement disparaging Radfar's national origin is an insufficient basis for finding that his conduct in drafting the police report was motivated by anti-Iranian animus. His remarks to her were made in the context of a "rancorous breakup," during which Radfar's own harassing behavior was self-admittedly "flawed." Also, there is no dispute that Covino called Radfar's employer after her aggressive conduct toward him in January 2017, which included hundreds of phone call from numerous numbers, and that Covino authored the police report and arranged to send the information at the request of GMU and VSP authorities. We therefore agree with the district court that the record does not give rise to a reasonable inference that anti-Iranian sentiment, rather than a desire to be left alone, motivated Covino.

In these circumstances, a single stray remark about Radfar's national origin does not permit the conclusion that that

Covino's later conduct was impermissibly driven by national-origin animus. See Soto, 103 F.3d at 1072 (concluding that remarks that showed "some evidence of discriminatory intent" were insufficient to sustain an equal protection claim); cf. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 29 (1st Cir. 2007) (noting, in the employment context, that discriminatory comments made by a non-decisionmaker were "nothing more than stray remarks . . . . insufficient to block summary judgment"). That is especially so where, as here, Radfar has provided no information about the timing or context of Covino's remark and has not tethered the statement about her national origin to Covino's creation of the incident report. See Acevedo-Parilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 144 (1st Cir. 2012) ("[I]n evaluating . . . [discriminatory] remarks made by a decisionmaker, this court has considered their temporal proximity and causal connection to the [adverse action]."). Summary judgment was therefore appropriate.[5]

**Fourth:** Finally, Radfar's malicious prosecution claim was properly rejected. To the extent that Radfar brings the claim under § 1983, she must show, inter alia, the commencement or

---

[5] Radfar's appellate brief also mentions due process and First Amendment retaliation claims. Radfar did not raise these claims in her complaint or in the district court proceedings. We therefore do not address them. See Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 20 (1st Cir. 2003) ("It is elementary that a plaintiff cannot constructively amend his complaint with an allegation made for the first time in an appellate brief.").

continuation of a criminal proceeding against her at Covino's behest and the "deprivation of a federally-protected right." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). Under Massachusetts law, the tort of malicious prosecution can also extend to the "unjustifiable initiation of a civil action," although the initiator need only have a reasonable belief that the claim may be valid; probable cause of guilt is not required. Hubbard v. Beatty & Hyde, Inc., 178 N.E.2d 485, 487 (Mass. 1961).

Here, no criminal proceedings were ever commenced against Radfar, even though a Virginia prosecutor considered bringing them during the VSP investigation. See Kirby v. Illinois, 406 U.S. 682, 689 (1972) (indicating criminal proceedings are initiated by formal charge, preliminary hearing, indictment, information, or arraignment). The incident report written by Covino is not a charging document, and there is no dispute that Radfar was never charged criminally in Massachusetts or anywhere else. Thus, Radfar cannot show that a criminal proceeding commenced against her.

That Covino obtained the civil abuse-prevention order does not suffice under Massachusetts law either. As mentioned above, the undisputed facts show that Covino was motivated by a desire to end Radfar's contact with him and that was why he sought and obtained the abuse-prevention order. The summary judgment record thus demonstrates Covino had a reasonable basis for

- 17 -

believing that initiation of the abuse-prevention proceeding was valid.[6]

For the reasons stated in the district court's orders and our additional comments above, Radfar has not demonstrated that there are triable claims against the Revere Defendants or Covino.

**Affirmed**.

---

[6]     Radfar also references a purported discovery dispute but fails to demonstrate how the resolution of this dispute in her favor would have changed the summary judgment outcome and did not file a Federal Rule of Civil Procedure 56(d) motion in the district court.  See Jones v. Secord, 684 F.3d 1, 6 (1st Cir. 2012).